# THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNA SWISHER and
REGINALD GALLMAN,
individually and as Parents and
Natural Guardians of FG, their
minor child,
          Plaintiffs

        vs.

JERSEY SHORE AREA SCHOOL
DISTRICT; JERSEY SHORE AREA :
SCHOOL DISTRICT BOARD OF
DIRECTORS; BRIAN T. ULMER,
Individually and as Superintendent
of JERSEY SHORE AREA SCHOOL:
DISTRICT; STEVEN KEEN,
Individually and as Principal of
JERSEY SHORE AREA SENIOR
HIGH SCHOOL; ELIZABETH
SEAGRAVES, Individually and as
Assistant Principal of JERSEY
SHORE AREA SENIOR HIGH
SCHOOL; KENNETH DADY,
Individually and as Assistant
Superintendent of JERSEY
SHORE AREA SENIOR HIGH
SCHOOL,

        Defendants

CIVIL ACTION - LAW

NO.

JUDGE:

ELECTRONICALLY FILED

JURY TRIAL DEMANDED

## COMPLAINT

1.      Plaintiffs, Jenna Swisher and Reginald Gallman, are adult individuals and natural parents and guardians of FG, their minor child, who at all times relevant hereto resided within Defendant Jersey Shore Area School District located within the Middle District of Pennsylvania.

2.      Defendant, Jersey Shore Area School District ("JSASD"), is a public school district formed pursuant to the laws of the Commonwealth of Pennsylvania, which receives federal  financial assistance, acting through and governed  by its Board of Directors and Superintendent, whose District Office is located at 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

3.      Defendant, Jersey Shore Area School District Board of Directors ("Board"), is the duly elected School Board, pursuant to the laws of the Commonwealth of Pennsylvania, and highest ranked local governing body, and ultimate decision-making authority, of Defendant JSASD, which may be located at the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

4.      Defendant, Brian Ulmer, is an adult individual and, beginning in or about June 2020, the Superintendent and highest ranked and ultimate decision-making administrative official of Defendant JSASD, who may be located at the

JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

5.    Defendant, Steven Keen, is an adult individual and Principal and highest ranked administrative official on site of Defendant JSASD High School ("High School"), who may be located through the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

6.    Defendant, Elizabeth Seagraves, is an adult individual and Assistant Principal of the High School, who may be located through the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

7.    Defendant, Kenneth Dady is an adult individual and, beginning in or about June 2020, the Assistant Superintendent and highest ranked and ultimate decision-making administrative official of Defendant JSASD, who may be located at the JSASD District Office, 175 A&P Drive, Jersey Shore, Lycoming County, Pennsylvania, 17740, within the Middle District of Pennsylvania.

8.    At all times relevant hereto, FG was enrolled as a student in JSASD.

9.    This action is brought pursuant to the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq. ("Title VI"), regarding racial discrimination, harassment and retaliation.

10.    This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1343.

11.   Defendants were found doing business within the Middle District of Pennsylvania, and a substantial part of the events or omissions giving rise to the claims occurred within the Middle District of Pennsylvania.

12.   Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. §1391.

13.   FG is biracial. Her father, Reginald Gallman is African American, and her mother, Jenna Swisher is Caucasian.

14.   Plaintiffs reside in Cogan Station, Pennsylvania, within the JSASD District.

15.   Pursuant to Pennsylvania law, Plaintiff, FG has a property interest in, and is entitled to receive, a free and full education from Defendant JSASD pursuant to 22 Pa. Code §12.1.

### JSASD and Board Policies

16.   Defendants JSASD and Board enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying including, inter alia: Board Policy 103 Discrimination/Title IX Sexual Harassment Affecting Students; Discrimination Complaint Procedures; Board Policy 248 Unlawful Harassment; Board Policy 249 Bullying/Cyberbullying; and relevant pages of a

Student Handbook. *See*, Exhibits A to E attached hereto and referred to herein as though fully set forth.

17.    These Policies and Procedures specifically cite legal authority pursuant to, inter alia, U.S. Const. Amend XIV Equal Protection Clause, 20 U.S.C. §§1681 et seq., 20 U.S.C §7118, 42 U.S.C §§1981 et seq., 42 U.S.C. §§2000d et seq., 34 CFR §§100 et seq., 18 Pa. C.S.A. §2709, 24 P.S. §1302-A, 24 P.S. §1303.1-A, 24 P.S. §1310, 24 P.S. §5004, 43 P.S. §§951 et seq., 22 Pa. Code §§12.1, 12.2, 12.3 and 12.4, and the Office for Civil Rights -Resources for Addressing Racial Harassment.

18.    Defendants, via these Policies and Procedures, recognized and confirmed Defendants' affirmative legal duties to address racial discrimination, harassment and retaliation, and bullying, within JSASD, i.e.:

    18.1    "provide an equal opportunity for all students to achieve their maximum potential through the programs and activities offered in the schools without discrimination on the basis of race;"

    18.2    maintain "a safe, positive learning environment for all students that is free from discrimination by providing all students course offerings, counseling, assistance, services, employment, athletics and extracurricular activities without any form of discrimination;"

18.3   "maintain an educational environment in which harassment in any form is not tolerated;"

18.4   "prohibit[] all forms of unlawful harassment of students... by all district students;"

18.5   "prohibit[] all forms of bullying by district students;"

18.6   "ensure adequate nondiscrimination procedures are in place, to recommend new procedures or modifications to procedures and to monitor the implementation of the district's nondiscrimination procedures;"

18.7   "provide training for students and employees regarding all aspects of unlawful harassment;"

18.8   establish "[r]easonably prompt timeframes ... for completing each step of the discrimination complaint procedures, including timeframes for filing and resolving appeals;"

18.9   "promptly notify the Title IX Coordinator of all reports of discrimination;"

18.10  have "the Title IX Coordinator ... promptly contact the complainant regarding the report to gather additional information as necessary, and to discuss the availability of supportive measures;"

18.11 inform "[t]he complainant ... about the Board's policy on discrimination" and "relevant information on resources available in addition to the discrimination complaint procedure, such as making reports to the police, [and] available assistance ... including counseling resources;"

18.12 "promptly implement appropriate measures to protect the complainant and others as necessary from violation of the policy throughout the course of the investigation;"

18.13 "provide to the complainant factual information on the complaint and the investigative process... and the right to file criminal charges;"

18.14 document, if "resolved to the satisfaction of the parties, the nature of the complaint and the proposed resolution of the matter, have both parties sign the documentation to indicate agreement with the resolution and receive a copy, and forward it to the Compliance Officer;"

18.15 have "[t]he Compliance Officer... contact the complainant to determine if the resolution was effective and to monitor the agreed upon remedies, and... document all appropriate actions;"

18.16 "conduct an adequate, reliable and impartial investigation;"

18.17 if the allegations "involve a violation of criminal law... promptly inform law enforcement authorities about the allegations;"

18.18 "direct[] that complaints of harassment shall be investigated promptly, and corrective action be taken when allegations are substantiated;"

18.19 if there will be any delay in the process, provide "[w]ritten notice of the delay or extension and the reason for such action... to the complainant and the respondent, and document[] with the records of the complaint;"

18.20 "[n]otify the complainant and the accused of the progress at appropriate stages of the procedure;"

18.21 "consider the record as a whole and the totality of circumstances in determining whether a violation of Board policy has occurred, recognizing that persistent and pervasive conduct, when taken together, may be a violation even when the separate incidents are not severe;"

18.22 "prepare and submit a written report" within certain time frames including "a summary of the investigation, a determination of whether the complaint has been substantiated as factual, the information and evaluation that formed the basis for this

8

determination, whether the conduct violated Board Policy ... and of any other violations of law or Board policy which may warrant further district action, and a recommended disposition of the complaint;"

18.23 inform "[t]he complainant and the respondent... of the outcome of the investigation, for example, whether the investigator believes the allegations to be founded or unfounded, within a reasonable time of the submission of the written investigative report, to the extent authorized by the Family Educational Rights and Privacy Act (FERPA) and other applicable laws" and "the recommended disposition of the complaint;"

18.24 "take prompt, corrective action designed to ensure that such conduct ceases and that no retaliation occurs....[and] promptly take appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on the complainant and the district education program or activity ....document the corrective action taken and, where not prohibited by law, inform the complainant ... [and] follow up by assessing the effectiveness of the corrective action at reasonable intervals;"

18.25 provide an appeal procedure if "the complainant or the respondent is not satisfied with a finding made pursuant to these procedures or with recommended corrective action;"

18.26 "prepare a written response to the appeal within" certain timeframes and provide a copy of the response to "the complainant, the respondent and the investigator who conducted the initial investigation;"

18.27 "annually provide the following [and other harassment and criminal conduct] information with the Safe School Report:

1.    Board's Bullying Policy.

2.    Report of bullying [and other harassment and criminal conduct] incidents.

3.    Information on the development and implementation of any bullying prevention, intervention or education programs;"

18.28 "develop, implement and evaluate bullying prevention and intervention programs and activities."

19.    In addition to their legal duties regarding Safe School Reports, 24 P.S. §13-1303-A, Defendants also had the legal duty to report information regarding racial discrimination, harassment and retaliation, and bullying, and certain criminal

10

conduct, to the United States Department of Education via the Civil Rights Data Collection program. 20 U.S.C. §3413; 34 C.F.R. §100.6.

20.    Defendant JSASD and Defendant Board delegated to JSASD's Superintendent, such as Defendant Ulmer, the ultimate administrator decision-making authority and responsibility for administering and supervising implementation and adherence to the above Policies and Procedures, the individuals charged with conducting investigations and making reports and recommendations, and the ultimate dispositions and corrective actions taken, including the consideration of any appeals, and training JSASD personnel regarding the same.

21.    Defendant JSASD and Defendant Board delegated to a Building Principal, such as Defendant Keen, in conjunction with the Title IX Coordinator, and pending consultation with, disclosure to, and review by the Superintendent, and the Superintendent's ultimate authority, the authority to investigate, report on, and make recommendations regarding the disposition and corrective actions to be taken regarding racial discrimination, harassment and retaliation, and bullying.

22.    Under certain circumstances, Defendant JSASD and Defendant Board permitted delegation to an Assistant Principal, such as Defendant Seagraves, in conjunction with the Title IX Coordinator, pending consultation with, disclosure to, and review by the Superintendent, and the Superintendent's ultimate authority, the authority to investigate, report on, and make recommendations regarding the

disposition and corrective actions to be taken regarding racial discrimination, harassment and retaliation, and bullying.

23.   Defendants affirmatively held out and represented these Policies and Procedures to the United States and Pennsylvania Departments of Education, students, parents, staff, and the general public, as reasonable, necessary and required policies and procedures to address racial discrimination, harassment and retaliation, and bullying, within JSASD, and that the same would be adhered to.

24.   Plaintiff FG relied upon this representation to her detriment.

25.   Upon information, knowledge and belief, the reports and other documents required by the above Policies and Procedures, including the identities of those reporting racial discrimination, harassment and retaliation, and bullying, and those alleged to have engaged in the same, to the extent the same were created as required, would have been maintained regarding all of the events involving FG and others, so that they would have been available for review and considerationduring investigations by Defendants for each subsequently reported event, and in determining a reasonable disposition and response to the events.

26.   The combined actions and inactions of Defendants Board, Ulmer, Keen and Seagraves, as described more fully below, combined with their levels of authority within Defendant JSASD, created and maintained a pattern, practice,

policy and custom of Defendant JSASD of deliberate indifference to racial discrimination, harassment and retaliation, and bullying, and directly and/or impliedly excusing, allowing, supporting, furthering, facilitating and promoting the same.

### Facts

27.    While a middle-school student at JSASD, FG first experienced racial discrimination.

28.    In or about October, 2018, a male student approached FG and asked her "when does your dad get out of jail?"

29.    FG was shocked by the comment, and replied that her father was not in jail, and when she told the male student that her father was not in jail, the male student relied "well, your dad is black and I thought that all black kids' dads are in jail."

30.    Shortly thereafter, the male student began calling FG "Tanya" because "Tanya is a black girl name."

31.    Subsequently, on or about February 27, 2019, a group of female students approached FG in the lunch room, and began singing the song "Baa Baa Black Sheep" which FG believed to be discriminatory.

32.    This incident was reported to Defendant JSASD on March 1, 2019.

33.    On or about August 27, 2020, in a time of particular political strife, FG observed a student wearing a "Trump 2020" mask, and when the issue was raised to

13

JSASD, no action was taken.

34.    On or about February 5, 2021, FG experienced aggressive behaviors from another student during gym class, who threatened FG, by swinging a metal Yeti water bottle at FG, and telling her "I am going to drag you."

35.    The February 5, 2021 incident was reported to JSASD on February 6, 2021.

36.    On or about October 29, 2021, FG experienced racial slurs while at JSASD, which was reported to Defendant, Brian Ulmer on October 31, 2021.

37.    On October 29, 2021, FG was walking from her 6th period to class to her 7th period class when two male students, AD and GP, approached FG. AD said "dang, bro, this schools is full of a bunch n******." GP laughed at the comment.

38.    It is believed that there was school camera video footage of the October 29, 2021 incident, which on November 1, 2021, Defendant Ulmer indicated he would work to preserve.

39.    After telling her parents, about the October 29, 2021 incident, FG was told by a school officer of JSASD "why did you want to tell this to your parents? That's like throwing something on the wall and hope it sticks."

40.    On several occasions, in November, 2021, in her Spanish class, FG observed students, ES and JS calling another black student a "negro" and asked if calling the Black Friday holiday "Negro Viernes" was offensive to the black student.

41.    On or about December 9, 2021, more racial slurs were hurled at FG while she was at school.

42.     On December 9, 2021, FG was walking to her Algebra class, when a student, JL came between FG and another black student, AB, and started screaming the "n-word" at FG and AB. When JL was done yelling the "n-word", AB told JL that it was "not okay" to say the "n-word" and JL responded saying it was okay for him to say, because he had the "N pass."

43.     Students were aware that FG met with school officials regarding the December 9, 2021 incident, calling FG a "snitch."

44.     During his investigation of the December 9, 2021 incident, Defendant Ulmer also told FG that "did JL feel okay saying those words [n-word] because he had the 'n pass'?"

45.     FG responded to Defendant Ulmer by telling him that there was no such thing as an n-pass, and that saying the n-word was wrong.

46.     On or about March 14, 2022, a student, E (last name unknown), threw a banana at an African American student, and chanted the word "n*****" at the student, and received an in-school suspension for the incident.

47.     On March 16, 2022, E sat behind FG in Spanish class, threw things into FG's hair, and whispered the word "n*****" to FG. FG then turned around and looked at E, who then quickly diverted his attention from FG to another male African American student, and started chanting the word "n*****" in the direction of the male African American student.

48.     No action was taken by JSASD.

49.     On or about March 17, 2022, FG encountered yet another incident of racial discrimination in her Spanish class, where the student, E, once again called a male African American student the "n-word" repeatedly during class.

50.     No action was taken by FG's Spanish teacher or JSASD.

51.     On or about March 23, 2022, FG was called a "monkey" by a student, who while FG was in 6th grade had called her "black trash."

52.     FG continues to attend school at JSASD and is subjected to racial discrimination on an ongoing and continuous basis.

53.     In spite of all of the above events and reports of racial discrimination, harassment, and retaliation, and bullying, neither Defendant Ulmer nor any of the Defendants ever disseminated such a message, through the JSASD website or other means, or anyone else regarding the racial discrimination, harassment and retaliation, and bullying, that was occurring at JSASD and as had been reported as described above.

54.     In spite of all of the above events and reports of racial discrimination, harassment, and retaliation, and bullying, neither Defendant Ulmer nor any of the Defendants ever convened or attempted to convene a presentation or further training for the student body or staff or members of the community regarding racial discrimination, harassment and retaliation, and bullying, generally, or that was occurring at JSASD and as had been reported as described above.

55.     To date, Plaintiffs have neither heard nor received anything further

from Defendants or other representative of JSASD regarding the above events.

56.    The above-described events were motivated by FG's race, and constituted racial discrimination, harassment, and retaliation, and bullying.

57.    The racial discrimination, harassment and retaliation, and bullying, took place under circumstances where Defendants exercised substantial control over the discriminators, harassers and retaliators and the context in which the racial discrimination, harassment and retaliation, and bullying occurred.

58.    Defendants had actual knowledge of the racial discrimination, harassment and retaliation, and bullying.

59.    The racial discrimination, harassment and retaliation, and bullying, were severe, pervasive, and objectively offensive.

60.    Defendants Ulmer, by his above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiff, FG's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the
United States Constitution and 42 U.S.C. §1983, and Title VI, by:

> 60.1    Failing or refusing properly to supervise or provide appropriate training to Defendants Keen and Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial

discrimination, harassment and retaliation, and bullying;

60.2     Failing or refusing properly to document Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

60.3     Failing or refusing properly to notify, involve and coordinate in conjunction with the Title IX Coordinator;

60.4     Failing or refusing properly to have the Title IX Coordinator contact Plaintiffs, about the reports and gather further information;

60.5     Failing or refusing properly to discuss with Plaintiffs, the availability of supportive measures;

60.6     Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

60.7     Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

60.8     Failing or refusing properly to train and/or retrain students and employees;

60.9     Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

60.10    Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

60.11    Failing or refusing properly to provide Plaintiffs with written notice of any delays and the reason(s) for the same, nor documenting the same;

60.12    Failing or refusing properly to inform Plaintiffs about the Board's policies on discrimination;

60.13    Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs, or others, from policy violations during any investigations;

60.14    Failing or refusing properly to provide Plaintiffs with timely information concerning the factual information on the complaints and the investigative process;

60.15   Failing or refusing properly to conduct adequate and reliable investigations;

60.16   Failing or refusing properly to inform Plaintiffs of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

60.17   Failing or refusing properly to create proper and timely written reports of the investigations;

60.18   Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

60.19   Failing or refusing properly to inform Plaintiffs of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

60.20   Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred [and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, and the district education program or activity;

60.21   Failing or refusing properly to inform Plaintiffs of the corrective actions taken;

60.22   Failing or refusing properly to follow up by assessing the

effectiveness of the corrective actions;

60.23   Failing or refusing properly to create an "ethics" or similar commission;

60.24   Failing or refusing properly to fully inform and educate Defendant Board regarding the racial discrimination, harassment and retaliation, and bullying, the progress of any investigations, and any corrective measures taken;

60.25   Failing and refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

60.26   Responding in a clearly unreasonable manner to address the racial discrimination, harassment, retaliation and bullying;

60.27   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment, retaliation and bullying were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

60.28   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try other reasonable alternatives such as:

a.  additional training or retraining of students and staff;

b. conducting presentations and/or assemblies for staff and/or the student body;

c. creating an "ethics" or similar commission;

d. disseminating educational materials to the staff and/or student body;

e. enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

f. providing information, education or guidance to the public through Board meetings and announcements;

g. taking stricter disciplinary or corrective actions;

h. facilitating and overseeing interaction betweenPlaintiffs, and those whom they reported and their parents, regarding what had occurred;

i. offering Plaintiffs an opportunity to address Defendant Board;

j. having an independent review conducted of what had occurred and the actions taken;

k. reinforcing the staff and students' strict adherence to the Policies and Procedures;

l.   amending Policies and Procedures; and

m.  such other measures as may become apparent;

60.29    Failing or refusing properly to report all of the above events in the Pennsylvania Department of Education required Safe Schools - School Report, or to the United States Department of Education via the Civil Rights Data Collection program.

60.30    Such other ways as may become apparent.

61. Defendant Keen, by his above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiffs', and FG's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by:

61.1    Failing or refusing properly to supervise or provide appropriate training to Defendant Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

61.2    Failing or refusing properly to document Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

61.3    Failing or refusing properly to notify, involve and coordinate in conjunction with the Title IX Coordinator;

61.4    Failing or refusing properly to have the Title IX Coordinator contact Plaintiffs, about the reports and gather further information;

61.5    Failing or refusing properly to discuss with Plaintiffs, the availability of supportive measures;

61.6    Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

61.7    Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

61.8    Failing or refusing properly to train and/or retrain students and employees;

61.9    Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

61.10   Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

61.11   Failing or refusing properly to provide Plaintiffs with written notice of any delays and the reason(s) for the same, nor documenting the same;

61.12   Failing or refusing properly to inform Plaintiffs about the Board's policies on discrimination;

61.13   Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs, or others, from policy violations during any investigations;

61.14   Failing or refusing properly to provide Plaintiffs with timely information concerning the factual information on the complaints and the investigative process;

61.15   Failing or refusing properly to conduct adequate and reliable investigations;

61.16   Failing or refusing properly to inform Plaintiffs of the anticipated dates for completion of investigative reports, and anychanges to the anticipated due dates;

61.17   Failing or refusing properly to create proper and timely written reports of the investigations;

61.18   Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

61.19   Failing or refusing properly to inform Plaintiffs of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

61.20   Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred [and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, and the district education program or activity;

61.21   Failing or refusing properly to inform Plaintiffs of the corrective actions taken;

61.22   Failing or refusing properly to follow up by assessing the

effectiveness of the corrective actions;

61.23   Failing or refusing properly to create an "ethics" or similar commission;

61.24   Failing or refusing properly to fully inform and educate Defendant Board regarding the racial discrimination, harassment and retaliation, and bullying, the progress of any investigations, and any corrective measures taken;

61.25   Failing and refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

61.26   Responding in a clearly unreasonable manner to address the racial discrimination, harassment, retaliation and bullying;

61.27   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment, retaliation and bullying were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

61.28   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try other reasonable alternatives such as:

n.  additional training or retraining of students and staff;

o.  conducting presentations and/or assemblies for staff and/or the student body;

p.  creating an "ethics" or similar commission;

q.  disseminating educational materials to the staff and/or student body;

r.  enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

s.  providing information, education or guidance to the public through Board meetings and announcements;

t.  taking stricter disciplinary or corrective actions;

u.  facilitating and overseeing interaction betweenPlaintiffs, and those whom they reported and their parents, regarding what had occurred;

v.  offering Plaintiffs, an opportunity to address Defendant Board;

w.  having an independent review conducted of what had occurred and the actions taken;

x.  reinforcing the staff and students' strict adherence to the Policies and Procedures;

y.  amending Policies and Procedures; and

z.  such other measures as may become apparent;

61.29    Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools - School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

61.30    Such other ways as may become apparent.

62.    Defendant Seagraves, by her above actions and inactions, and to the extent she had been delegate any investigatory, reporting, and disposition/corrective action responsibilities, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and otherwise violated Plaintiff, FG's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by:

62.1    Failing or refusing properly to document Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

62.2    Failing or refusing properly to notify, involve and coordinate in conjunction with the Title IX Coordinator;

62.3    Failing or refusing properly to have the Title IX Coordinator

contact Plaintiffs, about the reports and gather further information;

62.4 Failing or refusing properly to discuss with Plaintiffs, the availability of supportive measures;

62.5 Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

62.6 Failing or refusing properly to recommend or put into place new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

62.7 Failing or refusing properly to train and/or retrain students and employees;

62.8 Failing or refusing properly to monitor and provide technical assistance to individuals involved in managing informal reports and formal complaints;

62.9 Failing or refusing properly to follow prompt timeframes for investigating and documenting and reporting Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

62.10 Failing or refusing properly to provide Plaintiffs with written notice of any delays and the reason(s) for the same, nor

documenting the same;

62.11    Failing or refusing properly to inform Plaintiffs about the Board's policies on discrimination;

62.12    Failing or refusing properly to promptly implement appropriate measures to protect Plaintiffs, or others, from policy violations during any investigations;

62.13    Failing or refusing properly to provide Plaintiffs with timely information concerning the factual information on the complaints and the investigative process;

62.14    Failing or refusing properly to conduct adequate and reliable investigations;

62.15    Failing or refusing properly to inform Plaintiffs or FG of the anticipated dates for completion of investigative reports, and any changes to the anticipated due dates;

62.16    Failing or refusing properly to create proper and timely written reports of the investigations;

62.17    Failing or refusing properly to consider the record as a whole or the totality of the circumstances;

62.18    Failing or refusing properly to inform Plaintiffs or FG of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

62.19    Failing or refusing properly to take prompt, corrective action designed to ensure that such conduct ceased and that no retaliation occurred [and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiff, FG and the district education program or activity;

62.20    Failing or refusing properly to inform Plaintiffs of the corrective actions taken;

62.21    Failing or refusing properly to follow up by assessing the effectiveness of the corrective actions;

62.22    Failing or refusing properly to create an "ethics" or similar commission;

62.23    Failing or refusing properly to fully inform and educate Defendant Board regarding the racial discrimination, harassment and retaliation, and bullying, the progress of any investigations, and any corrective measures taken;

62.24    Failing and refusing properly to take timely, appropriate and reasonable action to investigate or otherwise determine what had occurred, and remedy the situation;

62.25    Responding in a clearly unreasonable manner to address the racial discrimination, harassment, retaliation and bullying;

62.26   Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment, retaliation and bullying were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

62.27   Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try other reasonable alternatives such as:

    a.  additional training or retraining of students and staff;

    b.  conducting presentations and/or assemblies for staff and/or the student body;

    c.  creating an "ethics" or similar commission;

    d.  disseminating educational materials to the staff and/or student body;

    e.  enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation, and bullying, in schools;

    f.  providing information, education or guidance to the public through Board meetings and announcements;

    g.  taking stricter disciplinary or corrective actions;

h.  facilitating and overseeing interaction betweenPlaintiffs, and those whom they reported and their parents, regarding what had occurred;

i.  offering Plaintiffs an opportunity to address Defendant Board;

j.  having an independent review conducted of what had occurred and the actions taken;

k.  reinforcing the staff and students' strict adherence to the Policies and Procedures;

l.  amending Policies and Procedures; and

m.  such other measures as may become apparent;

62.28   Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools - School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

62.29   Such other ways as may become apparent.

63.   Defendant Board, by its above actions and inactions, ignored and/or violated Defendant JSASD's and Defendant Board's enacted Policies and Procedures regarding racial discrimination, harassment, and retaliation, and bullying, and

34

otherwise violated Plaintiff, FG's rights under the Equal Protection Clause and Due Process Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983, and Title VI, by:

63.1   Failing or refusing properly to request and review documentationor information concerning what Plaintiffs had reported, and the investigations, dispositions and corrective actions taken;

63.2   Failing or refusing properly to supervise or provide appropriate training to Defendants Ulmer, Keen and Seagraves, and other JSASD personnel, regarding the JSASD and Board Policies and Procedures, and appropriate responses to reports of racial discrimination, harassment and retaliation, and bullying;

63.3   Failing or refusing properly to ensure proper documentation of Plaintiffs' reports of racial discrimination, harassment and retaliation, and bullying;

63.4   Failing or refusing properly to ensure that the Title IX Coordinator was notified and involved;

63.5   Failing or refusing properly to ensure that the Title IX Coordinator contact Plaintiffs about the reports andgather further information;

63.6    Failing or refusing properly to ensure discussions with Plaintiffs about the availability of supportive measures;

63.7    Failing or refusing properly to ensure that adequate nondiscrimination procedures were in place;

63.8    Failing or refusing properly to ensure new procedures or modifications regarding racial discrimination, harassment and retaliation, and bullying, and monitor the implementation of the same;

63.9    Failing or refusing properly to ensure proper training and/or retraining of students and employees;

63.10    Failing or refusing properly to ensure the monitoring and providing technical assistance to individuals involved in managing informal reports and formal complaints;

63.11    Failing or refusing properly to ensure prompt timeframes for investigating and documenting and reporting Plaintiffs' and reports of racial discrimination, harassment and retaliation, and bullying;

63.12    Failing or refusing properly to ensure providing Plaintiffs with written notice of any delays and the reason(s) for the same,nor documenting the same;

36

63.13    Failing or refusing properly to ensure informing Plaintiffs about the Board's policies on discrimination;

63.14    Failing or refusing properly to ensure promptly implementing appropriate measures to protect Plaintiffs, or others, from policy violations during any investigations;

63.15    Failing or refusing properly to ensure providing Plaintiffs with timely information concerning the factual information on the complaints and the investigative process;

63.16    Failing or refusing properly to ensure providing Plaintiffs with information on resources available;

63.17     Failing or refusing properly to ensure conducting adequate and reliable investigations;

63.18    Failing or refusing properly to ensure creating proper and timely written reports of the investigations;

63.19    Failing or refusing properly to ensure considering the record as a whole or the totality of the circumstances;

63.20    Failing or refusing properly to ensure informing  Plaintiffs of the outcome of investigations or recommended dispositions within a reasonable time or, in some cases, at all;

63.21    Failing or refusing properly to ensure taking prompt, corrective

action designed to ensure that such conduct ceased and that no retaliation occurred....[and] promptly taking appropriate steps to prevent the recurrence of the prohibited conduct and to address the discriminatory effect the prohibited conduct had on Plaintiffs, and the district education program or activity;

63.22    Failing or refusing properly to create an "ethics" or similar commission;

63.23    Failing or refusing properly to ensure informing Plaintiffs of the corrective actions taken;

63.24    Failing or refusing properly to ensure following up by assessing the effectiveness of the corrective actions;

63.25    Failing or refusing properly to ensure informing  Plaintiffs of any appeal procedure;

63.26    To the extent that Plaintiffs may have appealed any findings or corrective actions, failing or refusing properly to ensure preparing a written response to the appeal within certain timeframes and providing a copy of the response to Plaintiffs;

63.27    Failing and refusing properly to ensure that timely, appropriate and reasonable action would be taken to investigate or otherwise determine what had occurred, and remedy the situation;

63.28    Failing and refusing properly to request and obtain additional information and guidance from Defendants Ulmer, Keen and Seagraves, or anyone else, regarding what had occurred, steps that were taken, and steps that could be taken;

63.29    Responding in a clearly unreasonable manner to address the racial discrimination, harassment and retaliation, and bullying;

63.30    Having actual knowledge that the efforts, and lack of efforts, to attempt to mediate the racial discrimination, harassment and retaliation, and bullying, were inadequate and ineffective, but continuing to engage in those same methods, or failures to act, to no avail;

63.31    Knowing that what had or had not been done in response had not sufficed, and failing or refusing properly to try or recommend other reasonable alternatives such as:

a.  additional training or retraining of students and staff;

b.  conducting presentations and/or assemblies for staff and/or the student body;

c.  creating an "ethics" or similar commission;

d.   disseminating educational materials to the staff and/or student body;

39

e.  enlisting the aid and advice of, and presentations by, any entities who specialize in racial discrimination, harassment and retaliation in schools;

f.  providing information, education or guidance to the public through Board meetings and announcements;

g.  taking stricter disciplinary or corrective actions;

h.  facilitating and overseeing interaction between Plaintiffs, and those whom they reported and their parents, regarding what had occurred;

i.  providing further information to Plaintiffs, so that a productive meeting with Defendants may occur;

j.  offering or having a meeting with Plaintiffs, after providing what information could be provided;

k.  offering Plaintiffs, an opportunity to address Defendant Board;

l.  having an independent review conducted of what hadoccurred and the actions taken;

m. reinforcing the staff and students' strict adherence to thePolicies and Procedures;

n.  amending Policies and Procedures;

o.  such other measures as may become apparent;

40

63.32    Failing or refusing properly to ensure proper reporting of all of the above events in the Pennsylvania Department of Education required Safe Schools - School Report, or to the United States Department of Education via the Civil Rights Data Collection program;

63.33    Such other ways as may become apparent.

64.    By their actions and inactions, and in violation of their own enacted Policies and Procedures, Defendants engaged in, furthered, facilitated, and promoted the racial discrimination, harassment and retaliation, and bullying.

65.    Defendants' actions and inactions caused Plaintiffs, to undergo the continued racial discrimination, harassment and retaliation, and bullying, and/or made them liable or vulnerable to it.

66.    Defendants acted with intent, and/or engaged in the unlawful practices maliciously, willfully, in bad faith, and/or with reckless disregard and deliberate indifference to Plaintiff, FG's rights.

67.    Defendants' actions and failures and refusals to act deprived Plaintiff, FG, of access to the educational opportunities or benefits available at Defendant JSASD.

68.    Due to the racial discrimination, harassment and retaliation, and bullying, and in fear for her safety given the same, Plaintiff FG has suffered severe

emotional distress.

69.     As a result of Defendants' conduct, Plaintiff, FG has suffered loss of educational benefits and opportunities, humiliation, emotional distress, medical bills, attorneys' fees and costs, and such other damages as may become apparent.

## COUNT I

70.     Paragraphs 1 through 68 are incorporated herein by reference as though fully set forth.

71.     Pursuant to the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution: "No state shall... deny to any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV, Section 1.

72.     Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State... subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be libel to the party injured in an action at law, suit and equity, or other proper proceeding for redress." 42 U.S.C. §1983.

73.     Through their actions and inactions, and failures or refusals to act, as described in detail, above, Defendants violated Plaintiff, FG's right to equal protection under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. §1983.

74.     Plaintiff, FG now seeks all rights and remedies to which she is entitled

pursuant to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, medical bills, attorneys' fees and costs, other compensatory damages, punitive damages, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

## COUNT II

75.    Paragraphs 1 through 75 are incorporated herein by reference as though fully set forth.

76.    Pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution: "No state shall... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, Section 1.

77.    Pursuant to 42 U.S.C. §1983: "Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State... subjects, or causes to be subjected, any citizens of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be libel to the party injured in an action at law, suit and equity, or other proper proceeding for redress." 42 U.S.C. §1983.

78.     Concerning their reports of racial discrimination, harassment and retaliation, and bullying, Plaintiff, FG was entitled to the processes and procedures by Defendants as set forth in the JSASD and Board Policies and Procedures described in more detail, above.

79.     Through their actions and inactions, and failures or refusals to act and follow those Policies and Procedures, Defendants denied and violated Plaintiff, FG's, rights to due process under the Fourteenth Amendment of the United Constitution and 42 U.S.C. §1983.

80.     Plaintiff FG seeks all rights and remedies to which she is entitled pursuant to the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983, including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, medical bills, attorneys' fees and costs, other compensatory damages, punitive damages,

declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

## COUNT III

81. Paragraphs 1 through 79 are incorporated herein by reference asthough fully set forth.

82. Pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq.: "No person in the United States shall, on the ground of race...be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

83. Through their actions and inactions, and failures or refusals to act, as described in detail, above, Defendants violated Plaintiff, FG's rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d, et seq.

84. Plaintiff, FG seeks all rights and remedies to which she is entitled pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§2000d et seq., including but not limited to, compensatory and punitive damages, declaratory and injunctive relief, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request This Honorable Court enter judgment in their favor, and award them damages for loss of educational benefits and opportunities, humiliation, emotional distress, medical bills,

attorneys' fees and costs, other compensatory damages, punitive damages, declaratory and injunctive relief, and such other relief as is appropriate. Plaintiffs demand a jury trial.

Respectfully submitted:

SAFFREN & WEINBERG

By: _____
Marc A. Weinberg, Esquire
815 Greenwood Ave., Ste. 22
Jenkintown, PA 19046
P: (215) 576-0100
mweinberg@saffwein.com
Pa. Atty. I.D.: 60643

Dated: 7-14-22