## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JENNA SWISHER and REGINALD
GALLMAN, *individually and as*
*parents and natural guardians of F.G.,*
*their minor child*,

              Plaintiffs.

      v.

JERSEY SHORE AREA SCHOOL
DISTRICT BOARD OF DIRECTORS,
et al.,

              Defendants.

No. 4:22-CV-01120

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 11, 2023

Racial discrimination is odious and promotes deleterious effects that reach far beyond the victim of such acts. This is especially true in a school setting that is populated by vulnerable children whose current and future education and, consequently, career prospects and earning capacities may be endangered by a failure to protect those children. Any failure to protect students from such harassment constitutes a dereliction of the educators' responsibilities to the students and the community at large. Plaintiffs here allege just such a dereliction of duty in the face of a school environment that contains racial animus and overtly racist acts perpetuated by at least some of the student body.

However disturbing any racism in a school setting may be, not every instance of racial harassment by a student or every failure to act by school employees creates a constitutional violation. Here, the allegations fail to establish that Defendants were aware of many of the instances of racial harassment referenced in the amended complaint, or that the school district acted with deliberate indifference to that harassment. Consequently, the allegations do not demonstrate a violation of anyone's rights, and the amended complaint will be dismissed.

## I.    BACKGROUND

### A.    Procedural History

In November 2022 Plaintiffs filed an amended complaint alleging that Defendants, all of whom are associated with the Jersey Shore Area School District ("JSASD"), violated F.G.'s rights by failing to take appropriate action to prevent racial harassment directed toward F.G. at her school, which is a part of the JSASD.[1] Plaintiffs raise claims for a violation of the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, a violation of the Due Process Clause of the Fourteenth Amendment, pursuant to § 1983, and a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.[2]

Presently before the Court are Defendants JSASD, Jersey Area School District Board of Directors, Brian T. Ulmer, Steven Keen, Elizabeth Seagraves, and Kenneth

---

[1]    Doc. 10.
[2]    *Id.*

2

Dady's (collectively "Defendants") motion to dismiss Plaintiffs' amended complaint.[3] This motion, having been fully briefed,[4] is ripe for disposition. For the following reasons, the Court will grant Defendants' motion.

### B.    Facts[5]

Plaintiffs' child, F.G., was a middle school student at JSASD in 2018 when she began experiencing racial discrimination and harassment—both explicit and implicit—at school.[6] The first event occurred in October of 2018, when another student asked F.G. "when does your dad get out of jail?"[7] When F.G. expressed shock at the comment and replied that her father was not in jail, the other student responded "well, your dad is black and I thought that all black kids' dads are in jail."[8] Shortly thereafter, the same student began referring to F.G. as "Tanya" because he felt that "Tanya is a black girl name."[9]

In February 2019, a group of students approached F.G. in the school's cafeteria and began singing "Baa Baa Black Sheep;" F.G. believed that this carried

---

[3]  Doc. 11.

[4]  Docs. 16, 17, 18.

[5]  As discussed below, for purposes of this motion, the Court accepts as true all allegations contained in the amended complaint. *See Fed. Trade Comm'n v. AbbVie Inc*, 976 F.3d 327, 351 (3d Cir. 2020) (in evaluating motion to dismiss court "must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief" (internal quotation marks omitted)).

[6]  Doc. 10 ¶ 27. F.G. is biracial—her mother is white, while her father is African American. *Id.* ¶ 13.

[7]  *Id.* ¶ 28.

[8]  *Id.* ¶ 29.

[9]  *Id.* ¶ 30.

racially discriminatory undertones.[10] F.G. reported this incident to JSASD shortly after it occurred.[11] In August 2020, a student wore a "Trump 2020" mask to school, but JSASD took no action after the incident was reported to it.[12] In February 2021, a student threatened F.G. during gym class, swung a metal water bottle at F.G., and stated "I am going to drag you."[13] This incident was reported to JSASD the following day.[14]

In October 2021, F.G. "experienced racial slurs" at school, including an incident when two students, A.D. and G.P., approached F.G., with A.D. then stating "dang, bro, this schools [sic] is full of a bunch of n******," to which G.P. laughed.[15] F.G. reported this incident to Ulmer, JSASD's superintendent, shortly after it occurred.[16] After F.G. informed her parents of this incident, a school officer at JSASD asked why F.G. had informed her parents and stated "[t]hat's like throwing something on the wall and hope [sic] it sticks."[17]

On several occasions in November of 2021, F.G. witnessed two students in her Spanish class, E.S. and J.S., call a different African American student a "negro";

---

[10]  *Id.* ¶ 31.
[11]  *Id.* ¶ 32.
[12]  *Id.* ¶ 33.
[13]  *Id.* ¶ 34.
[14]  *Id.* ¶ 35.
[15]  *Id.* ¶¶ 36, 37.
[16]  *Id.* ¶ 36.
[17]  *Id.* ¶ 39.

those students also inquired whether referring to "Black Friday" as "Negro Viernes" was offensive to that student.[18]

On December 9, 2021, F.G. was walking to class alongside another African American student, A.B., when J.L. walked between those two students and "started screaming the 'n-word' at" F.G. and A.B.[19] A.B. informed J.L. that it was unacceptable to use that slur, to which J.L. responded that "it was okay for him to say, because he had the 'N pass.'"[20] F.G. met with school officials regarding this incident, and other students then began referring to F.G. as a "snitch."[21] Ulmer investigated this incident and asked F.G. whether J.L. felt "okay saying those words [n-word] because he had the 'n pass?'"[22] F.G. informed Ulmer that the "n-pass" did not exist, and it was never acceptable to use that slur.[23]

In March 2022, a student, "E," threw a banana at an African American student "and chanted the word 'n*****' at the" African American student.[24] For this behavior, E received an in-school suspension.[25] Two days later, E was sitting behind F.G. in class when he began to throw things into F.G.'s hair "and whispered the word

---

18 *Id.* ¶ 40.
19 *Id.* ¶ 42.
20 *Id.*
21 *Id.* ¶ 43.
22 *Id.* ¶ 44.
23 *Id.* ¶ 45.
24 *Id.* ¶ 46.
25 *Id.* The amended complaint contains no allegations regarding to whom this incident was reported. However, based upon the fact that a suspension was issued, it may be inferred that the incident was reported to someone at JSASD with decision-making authority.

'n*****' to" F.G.[26] After F.G. turned to face E, E turned to another African American student and began "chanting the word 'n*****'" toward that student.[27] This behavior resulted in no action from JSASD.[28] The very next day in the same class, E "called a male African American student the 'n-word' repeatedly during class" and, again, no action was taken by the teacher or JSASD.[29] Less than one week later, a different student called F.G. a monkey; that student had previously called F.G. "black trash."[30]

F.G. continues to attend school at JSASD "and is subjected to racial discrimination on an ongoing and continuous basis."[31] Despite having received reports of racial discrimination, Defendants never disseminated any message regarding the racial discrimination, harassment, and retaliation that occurred, nor did they ever "convene[] or attempt[] to convene a presentation or further training for the student body or staff" regarding bullying, racial discrimination, harassment, or retaliation.[32]

---

[26]   *Id.* ¶ 47.

[27]   *Id.*

[28]   *Id.* ¶ 48. Although not stated in the amended complaint, the implication is that this behavior was brought to the attention of an employee of JSASD, although it cannot be inferred as to whom this report was made.

[29]   *Id.* ¶¶ 49, 50. Again, the amended complaint does not aver whether this incident was actually reported to anyone at JSASD, but it may be inferred from the complaint that such a report was made, although it is unclear to whom the report was made.

[30]   *Id.* ¶ 51.

[31]   *Id.* ¶ 52.

[32]   *Id.* ¶¶ 53, 54.

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[33] and *Ashcroft v. Iqbal*,[34] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[35] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[36]

## III.   ANALYSIS

Defendants argue that all of Plaintiffs' claims complaint must be dismissed.[37] The Court will therefore address each claim in turn.

---

[33]   550 U.S. 544 (2007).

[34]   556 U.S. 662 (2009).

[35]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

[36]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[37]   Doc. 16. Defendants assert that any claims asserted by Jenna Swisher and Reginald Gallman in their individual capacities must be dismissed, as must any claims asserted against the Jersey Shore Area School District Board of Directors, along with any request for punitive damages. Plaintiffs agree that such claims should be dismissed, Doc. 17 at 9-10, and the Court therefore

7

### A.      Equal Protection Claim

First, Defendants contend that the Equal Protection claim should be dismissed because the allegations contained in the amended complaint are insufficient to establish that JSASD created a custom or policy that encouraged bullying, or that the incidents were reported to individuals with decision making authority.[38] Moreover, Defendants argue that Plaintiffs have failed to plead the violation of a constitutional right, as the United States Constitution does not compel schools to intervene to prevent bullying.[39] Defendants further contend that there are no allegations against three of the individual defendants, and there are no allegations that would permit the inference that the individual defendants had knowledge of the racist bullying campaign to which F.G. was subjected and, in any event, the individual defendant would be entitled to qualified immunity.[40]

### 1.      Individual Defendants

Pursuant to 42 U.S.C. § 1983, individuals may bring a cause of action for damages related to the infringement of their rights under the United States Constitution.[41] A basic tenet of § 1983 is that, in order to state a viable claim, "a plaintiff must establish an underlying constitutional violation."[42]

---

does not address those arguments in this Memorandum Opinion but will instead grant Plaintiffs' motion as to these claims and dismiss them with prejudice.

[38]  Doc. 16 at 16-23.

[39]  *Id.* at 19-22.

[40]  *Id.* at 23-27.

[41]  *See* 42 U.S.C. § 1983.

[42]  *Miles v. Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (citing *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir. 2002)).

As to whether Plaintiffs have adequately pled a violation of F.G.'s constitutional rights under the Equal Protection Clause, the Court concludes that they have not. As an initial matter, while Defendants rely upon a number of cases that hold state schools do not violate the Fourteenth Amendment's Due Process Clause by failing to protect students from bullying, those cases are inapposite to a claim under the Equal Protection Clause.[43] Rather, as one court within this Circuit has recently recognized, "the Third Circuit has not addressed whether the [F]ourteenth [A]mendment's [E]qual [P]rotection [C]lause protects students from a school's deliberate indifference to student-on-student harassment."[44]

In the absence of any clear direction from the Third Circuit, this Court joins at least two other district courts[45] within this Circuit in finding persuasive the reasoning of the United States Court of Appeals for the Second Circuit, which has determined that "schoolteachers, administrators, and boards of education can be held liable for race discrimination" under the Equal Protection Clause if the plaintiff demonstrates "deliberate indifference on the part of the defendants themselves."[46]

---

[43] Even those cases acknowledge that schools may still be liable under the special relationship and/or state created danger exceptions to the general rule that, under the Due Process Clause, schools have no duty to protect students from other students. *See Morrow v. Balaski*, 719 F.3d 160, 166-67 (3d Cir. 2013) (en banc).

[44] *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19CV08450KSHCLW, 2020 WL 2847757, at *4 (D.N.J. June 1, 2020).

[45] *See id.*; *George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 460-61 (D.N.J. 2014).

[46] *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140 (2d Cir. 1999).

As the Second Circuit expounded:

> to succeed on a § 1983 equal protection claim of deliberate indifference to student-on-student racial harassment, well established law requires a plaintiff to prove (1) that the child in question was in fact harassed by other students based on his race; (2) that such race-based harassment was actually known to the defendant school official; and (3) that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant himself intended for the harassment to occur.[47]

Despite the fact that there may exist a valid cause of action against school officials under the Equal Protection Clause for failing to prevent student-on-student racial harassment, Plaintiffs have failed to adequately plead such a cause of action. The amended complaint plainly establishes that F.G. was discriminated against on the basis of her race over the course of two years, as it notes several instances of the use of loathsome racial slurs and racist tropes. These include, *inter alia*, the use of the "n-word" of several occasions,[48] calling F.G. a monkey,[49] stating that all black fathers are in jail,[50] and referencing "black girl name[s]."[51] The amended complaint further reveals that the racial harassment was known to at least one defendant, as

---

[47] *DiStiso v. Cook*, 691 F.3d 226, 241 (2d Cir. 2012) (internal citations and quotation marks omitted).
[48] Doc. 10 ¶¶ 36, 37, 42, 47.
[49] *Id.* ¶ 51.
[50] *Id.* ¶¶ 28-29.
[51] *Id.* ¶ 30.

two incidents involving the use of the "n-word" were reported to, or investigated by, Ulmer.[52]

However, there is simply a dearth of well-pled facts that would permit the Court to conclude that Ulmer's response to the "harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that [Ulmer] himself intended for the harassment to occur."[53] Specifically, the amended complaint only references Ulmer having knowledge of two incidents. In the first—occurring in October 2021—Ulmer was informed that two students approached F.G. and used the "n-word;" conspicuously absent from the amended complaint, however, is any reference to Ulmer's response to that incident, including punishment or lack thereof.[54]

Second, the amended complaint references an event in December 2021 when a student directed the n-word at F.G. and, during the subsequent investigation, Ulmer shockingly inquired whether F.G. believed that the other student felt "okay saying [the "n-word"] because he had the 'n pass?'"[55] However, again absent from the amended complaint is any averment regarding any disciplinary decision rendered by

---

[52]  *Id.* ¶¶ 36-37, 42-45. None of the other individual defendants are alleged to have been informed about any of the underlying events and, therefore, claims cannot proceed against those individual defendants.

[53]  *DiStiso*, 691 F.3d at 241.

[54]  Doc. 10 ¶¶ 36-39.

[55]  *Id.* ¶¶ 42-44.

Ulmer. In the absence of allegations regarding the punishment for these events, it is simply not possible to conclude that Ulmer's response was clearly unreasonable.[56]

The allegations contained in the amended complaint thus do not adequately allege an equal protection claim against any of the individual defendants. Those claims will therefore be dismissed.[57]

### 2.    JSASD

Turning to the question of whether Plaintiffs have adequately pled an equal protection claim against JSASD, it is well settled that, when a municipal organization is named in a § 1983 suit, that organization may only be held "liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom."[58] "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict."[59] "Custom, on the other hand, can be proven by

---

[56]  The amended complaint details two further incidents in March 2022 involving the use of the n-word directed toward African American students in class, and notes that no action was taken in response to those incidents. *Id.* ¶¶ 47-50. However, these paragraphs fail to state to whom these incidents were reported, and the incidents therefore cannot support the conclusion that Ulmer or any of the other individual defendants responded inappropriately to those instances of racial bullying, or that they were even aware of the incidents.

[57]  Because the Court concludes that the amended complaint fails to state a claim against the individual defendants, it declines to address at this time Defendants' assertion that the individual defendants are entitled to qualified immunity.

[58]  *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citing *Monell v. N.Y. City Dept. of Social Servs.*, 436 U.S. 658 (1978)).

[59]  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (brackets and internal quotation marks omitted).

showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law."[60] The United States Court of Appeals for the Third Circuit has explained that "[t]o satisfy the pleading standard, [plaintiffs] must identify a custom or policy, and specify what exactly that custom or policy was."[61]

> An individual's conduct implements official policy or practice under several types of circumstances, including when (1) the individual acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity, (2) the individual himself has final policy-making authority such that his conduct represents official policy, or (3) a final policy-maker renders the individual's conduct official for liability purposes by having delegated to him authority to act or speak for the government, or by ratifying the conduct or speech after it has occurred.[62]

"Although a policy or custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss. A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."[63] "He may do so by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation he alleges."[64] Plaintiffs may demonstrate an affirmative link by alleging that the municipal organization "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its

---

[60] *Id.* (internal quotation marks omitted).
[61] *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).
[62] *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006).
[63] *Roman*, 914 F.3d at 798.
[64] *Id.*

failure, at least in part, led to [the plaintiff's] injury."[65] A plaintiff "does not need to identify a responsible decisionmaker in [their] pleadings . . . [n]or [are they] required to prove that the custom had the [organization's] formal approval."[66]

"The pleading requirements are different for failure-to-train claims because a plaintiff need not allege an unconstitutional policy."[67] "Instead, [a plaintiff] must demonstrate that [an organization's] failure to train its employees reflects a deliberate or conscious choice."[68] "A plaintiff sufficiently pleads deliberate indifference by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."[69]

There are no allegations that JSASD implemented a formal policy promoting racial harassment and, therefore, JSASD may only be liable if decisionmakers implemented a custom, or if JSASD failed to adequately train its employees to address racial discrimination.

The allegations, however, are insufficient to demonstrate the existence of a custom of JSASD inadequately addressing racial harassment. As discussed above, only two of the incidents listed in the amended complaint are averred to have been

---

[65]   *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[66]   *Id.* (internal citation and quotation marks omitted).
[67]   *Id.*
[68]   *Id.* (internal quotation marks omitted).
[69]   *Id.* (brackets and internal quotation marks omitted).

reported to an individual defendant—those two instances having been reported to Ulmer. It may be inferred that an additional incident in March 2022, where a student threw a banana at an African American student and chanted the "n word," was reported to a decisionmaker at JSASD, as the offending student was subsequently suspended.[70] There are additional instances that—based upon the pleadings—it may be inferred were reported to *someone* at JSASD, these instances include: (1) in February 2019 a group of students approached F.G. and began singing the children's nursery rhyme Baa Baa Black Sheep;[71] (2) in August 2020 a student wore a "Trump 2020" mask to school;[72] (3) in February 2021 a student swung a metal bottle at F.G. and stated that she would "drag" F.G.;[73] and (4) in March 2022 a student on two occasions used the "n-word" in class with F.G.[74]

While the amended complaint makes clear that these four events were reported to someone as JSASD, it is beyond peradventure that "[t]o prove policy or custom, a plaintiff must show 'that a decision-maker is responsible either for the policy or, through acquiescence, for the custom.'"[75] The amended complaint does not allege, or permit the reasonable inference, that these events were reported to any

---

[70] Doc. 10 ¶ 46.

[71] *Id.* ¶ 31. This incident was reported "to Defendant JSASD." *Id.* ¶ 32.

[72] *Id.* ¶ 33. This incident was "raised to JSASD." *Id.* Notably as to this incident, there is no indication that the act was one of racial harassment, or that it was directed toward F.G.

[73] *Id.* ¶ 34. This event was "reported to JSASD." *Id.* ¶ 35. There is no indication that this incident was motivated by race rather than, for example, personal animosity.

[74] *Id.* ¶¶ 47, 49. The amended complaint avers that "[n]o action was taken by JSASD" or the teacher. *Id.* ¶¶ 48, 50.

[75] *Kean v. Henry*, 523 F. App'x 879, 881 (3d Cir. 2013) (quoting *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009)) (brackets omitted).

decisionmaker at JSASD, and these events therefore may not form the basis of a finding that JSASD followed any particular custom.

As to the two events that were reported to Ulmer,[76] the amended complaint makes no averments as to the punishment—or lack thereof—that may have been levied in those instances.[77] In the absence of such averments, it is impossible to determine whether JSASD or Ulmer's response to those events was inadequate. And, as to the incident involving the throwing of a banana, the aggressor was suspended.[78] The Court concludes that the present allegations are insufficient to determine that JSASD had a custom of responding inappropriately to allegations of racial harassment.

As to whether JSASD may be held liable on the theory that it inadequately trained its staff to address instances of racial harassment, the Court again concludes that Plaintiffs have failed to state a claim, as there are insufficient averments to demonstrate deliberate indifference. As to the first requirement to state such a claim, that "policymakers know that employees will confront a particular situation,"[79] it may be inferred that such is the case. There are two instances of racial harassment involving the use of an abhorrent racial slur—occurring two months apart in 2021— that were reported to Ulmer, which put JSASD on notice that its employees may

---

[76] Plaintiffs allege that Ulmer had decision-making authority on behalf of JSASD. Doc. 10 ¶ 4.
[77] *See id.* ¶¶ 36-39, 42-44.
[78] *Id.* ¶ 46.

[79] *Roman*, 914 F.3d at 798.

confront such harassment in the future. And it is natural to infer that school districts should expect at least occasional harassment and bullying among and between its students.

However, Plaintiffs' amended complaint fails at the second requirement—that "the situation involves a difficult choice or a history of employees mishandling."[80] First, it cannot reasonably be said that school faculty who encounter student-on-student racial harassment face a difficult choice. Rather, any decision is, or should be, very simple—stop the racial harassment, punish the harasser, and deter future harassment.

Second, the amended complaint fails to set forth a history of employee mishandling of racial harassment. The earliest mentions of any harassment began in 2019, but the only incidents that were definitively reported to decisionmakers at JSASD occurred in October 2021, December 2021, and March 2022. And there are no allegations as to how JSASD may have addressed the first two situations and, therefore, no indication that they were "mishandl[ed]."[81] Moreover, given that the amended complaint notes that the student involved in the third incident was suspended, it cannot be concluded that the employees mishandled that particular situation.[82] These incidents are, consequently, insufficient to demonstrate a history

---

[80]   *Id.*
[81]   *Id.*
[82]   Doc. 10 ¶ 46. Notably, this is the only incident discussed in the amended complaint where it can both be inferred that the incident was reported to decisionmakers at JSASD and where the ultimate resolution of the incident is set forth in the amended complaint

of employees mishandling situations involving racial harassment, and Plaintiffs'
failure-to-train claim cannot proceed as currently formulated.

The requirement that there be a history of mishandling is not a trivial one. As
the United States Supreme Court has explained, "[a] pattern of similar constitutional
violations by untrained employees is ordinarily necessary to demonstrate deliberate
indifference for purposes of failure to train."[83] This is so because "[w]ithout notice
that a course of training is deficient in a particular respect, decisionmakers can hardly
be said to have deliberately chosen a training program that will cause violations of
constitutional rights."[84] In light of Plaintiffs' failure to adequately plead liability for
JSASD based on the existence of a policy or custom, or the failure to properly train
its employees, Plaintiffs' equal protection claim against JSASD will be dismissed.

## B.     Due Process Claim

Next, Defendants contend that Plaintiffs' Due Process claim must be
dismissed because there was no affirmative duty to protect F.G. from other students,
and Defendants' failure to properly respond to complaints of bullying does not
constitute an affirmative act that may form the basis of liability.[85]

### 1.     Procedural Due Process

The Court first evaluates whether Plaintiffs have adequately pled a claim for
a violation of F.G.'s procedural due process rights. To state such a claim, Plaintiffs

---

[83] *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (internal quotation marks omitted).
[84] *Id.*
[85] Doc. 16 at 27-31.

"must allege that [F.G.] was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property and that the available procedures did not provide due process of law."[86] "Critically, the deprivation of the protected interest must be attributable to the [school] District, not a private actor."[87]

Here, Plaintiffs have alleged that Defendants' actions, or rather inactions, resulted in the deprivation of her access to educational benefits and opportunities.[88] It is well-established that, under Pennsylvania law, students have "a legitimate claim of entitlement to a public education" and, therefore, public education is an individual interest protected by the Fourteenth Amendment.[89] Consequently, Plaintiffs have adequately alleged the denial of a protected interest.

However, the allegations fall short of demonstrating that the available procedures did not provide due process of law. The amended complaint does not set forth what procedures were available to F.G., what processes were undertaken to investigate or address the few instances of racial harassment that were clearly reported to decisionmakers at JSASD, or how the procedures were inadequate. Accordingly, there is no allegation that would support the notion that JSASD's

---

[86] *Thompson v. State of Del. Dep't of Servs. for Child., Youth & Their Fams.*, 44 F.4th 188, 194 (3d Cir. 2022) (internal quotation marks omitted).

[87] *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x 120, 123 (3d Cir. 2014) (citing *Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 169 (3d Cir. 1989)).

[88] Doc. 10 ¶¶ 68-70.

[89] *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005).

available procedures did not provide F.G. with due process. Plaintiffs' procedural due process claim will therefore be dismissed.[90]

### 2.    Substantive Due Process

As to Plaintiffs' claim for a violation of F.G.'s substantive due process rights, "[t]he Supreme Court has long established that 'as a general matter, a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.'"[91] As such, a school district generally cannot be held liable for failing to protect students from student-on-student harassment, no matter how "unfair and unjust" the school's response to such harassment is.[92]

Nevertheless, two exceptions exist to that general rule. First, a school may have a duty to protect against harm from third parties when the "special relationship exception" applies—that is, "when a special relationship has been established because 'the State takes a person into its custody and holds him there against his will.'"[93] Second, a duty may be imputed to a school where the "state-created danger exception" applies, which occurs when "the state's own actions create the very danger that causes the plaintiff's injury."[94]

---

[90]    As discussed below, the Court will provide Plaintiffs leave to again amend their complaint. Should they choose to replead a substantive due process claim, they must bear in mind that the mere act of bullying by other students is insufficient to cause of denial of procedural due process—it must be Defendants' actions that caused the denial. *Monn*, 553 F. App'x at 123.

[91]    *Morrow*, 719 F.3d at 166 (quoting *DeShaney v. Winnebago Cnty. Dep't of Social Servs.,* 489 U.S. 189, 197 (1989)) (brackets and ellipsis omitted).

[92]    *Id.*

[93]    *Id.* at 167 (quoting *DeShaney,* 489 U.S. at 199-200).

[94]    *Id.*

The first exception does not apply here. As an initial matter, the Third Circuit in its *en banc* opinion in *Morrow v. Balaski* determined that "public schools, as a general matter, do not have a *constitutional* duty to protect students from private actors."[95] Consequently, in ordinary circumstances no special relationship will exist between a school and its students, although there remains "the possibility of a special relationship arising between a *particular* school and *particular* students under certain unique and narrow circumstances."[96] That is to say, a special relationship will not arise solely from "compulsory school attendance laws and the concomitant *in loco parentis* authority and discretion that schools necessarily exercise over students, or the school's failure to do more to protect" its students in any particular situation.[97]

The allegations in the amended complaint do not detail any unique and narrow circumstances between Defendants and F.G. that would give rise to a special relationship. To the contrary, Plaintiffs sole argument is that "it can be argued that a special relationship exists between FG and the Defendants, based upon Pennsylvania's compulsory school attendance laws."[98] This approach was squarely rejected by the Third Circuit in *Morrow* and, accordingly, Plaintiffs have failed to

---

[95] *Id.* at 170.
[96] *Id.* at 171.
[97] *Id.*
[98] Doc. 17 at 17.

plead the existence of a special relationship such that Defendants may be held liable for an alleged violation of F.G.'s substantive due process rights.

Turning to the question of whether the state-created danger exception may apply, to adequately allege such an exception, Plaintiffs' averments must demonstrate:

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[99]

Even assuming that the first and third prongs have been met—that Plaintiffs adequately alleged that harm to F.G. was foreseeable and direct and that a sufficient relationship existed between Defendants and F.G.—the allegations are insufficient to establish the second and fourth prongs of the state-created danger test.

With regard to the second prong, "[f]or behavior by a government officer to shock the conscience, it must be more egregious than 'negligently inflicted harm,' as mere negligence 'is categorically beneath the threshold of constitutional due

---

[99] *Id.* at 177.

process.'"[100] "Instead, 'only the most egregious official conduct can be said to' meet that standard."[101] Action that is taken, as here, "after time for unhurried judgments and careful deliberation may shock the conscience if done with deliberate indifference."[102] In such circumstances, an official's "actions may shock the conscience if they reveal a conscious disregard of a great risk of serious harm."[103]

As discussed previously, the allegations reveal only two instances in which an individual defendant or a decisionmaker for JSASD was notified of racial harassment directed against F.G., and in those two instances no allegation are presented as to what action, if any, was taken against the offending student.[104] Given that the amended complaint does not clarify what remedial actions were taken, it is not possible to conclude that Defendants' actions were taken with a degree of culpability that shocks the conscience.

With respect to the fourth prong, Plaintiffs must allege "an affirmative act that put [F.G.] in danger or made [her] more vulnerable to risk."[105] The Third Circuit has "explained that the line between action and inaction is not always easily drawn," but

---

[100] *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)).

[101] *Id.* (quoting *Lewis*, 523 U.S. at 846).

[102] *Id.* (internal quotation marks omitted).

[103] *Id.* (internal quotation marks omitted).

[104] The third incident reported to a decisionmaker—the March 2022 incident involving the use of the "n word" and throwing of a banana—is not alleged to have been directed toward F.G. Doc. 10 ¶ 46. And in any event, the offending student was suspended, and it cannot be said, without more detailed allegations, that this response shocks the conscience.

[105] *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 172 (3d Cir. 2017).

has noted that a plaintiff may not "simply attempt[] to redefine clearly passive inaction as affirmative acts."[106]

In light of the requirement that Defendants must have taken some affirmative acts that rendered F.G. more vulnerable to harm, Plaintiffs' allegations fall short of meeting the fourth prong. In response to the motion to dismiss, Plaintiffs argue that F.G. was harassed, reported that harassment, and "no action was taken and FG was subject to continued racial harassment, which was certainly foreseeable and directly as a result of Defendants['] failure to take any, let alone adequate, steps to remedy or deter the racial harassment."[107] But the Third Circuit has made clear that such inaction—failing to adequately respond to the harassment—is plainly insufficient to satisfy the fourth prong. In *Morrow*, the Third Circuit rejected the notion that the failure to punish a student by expelling that student could "constitute[] an affirmative exercise of authority," as such reasoning would mean that "every decision by school officials to use or *decline to use* their authority, disciplinary or otherwise, would constitute affirmative conduct that may trigger a duty to protect."[108]

Accordingly, there are no allegations of affirmative action from Defendants that would satisfy the fourth prong of the state-created danger exception. Rather,

---

[106]  *Morrow*, 719 F.3d at 177-78.
[107]  Doc. 17 at 18-19.
[108]  *Morrow*, 719 F.3d at 178. *See also Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x 172, 177-78 (3d Cir. 2016) (concluding that district court properly "found Appellants failed to establish a claim under a state-created danger theory" as "Appellants' student-on-student bullying claims rest on the contention that it was the School District's *inaction* that put D.B. at an additional risk of harm").

Plaintiffs "simply attempt[] to redefine clearly passive inaction as affirmative acts,"[109] which is insufficient. Because the amended complaint does not sufficiently allege either a special relationship or a state created danger, Plaintiffs' substantive due process claim will be dismissed.

### C.    Title VI Claim

Finally, Defendants assert that Plaintiffs' Title VI claim should be dismissed for failure to state a claim.[110] First, Defendants assert that such claims may not lie against individual defendants.[111] Second, as to claims against JSASD, Defendants argue that the amended complaint fails to properly allege that JSASD was deliberately indifferent to a racially hostile environment, that it had actual knowledge of such an environment, or that any decisionmaker failed to take corrective action, thereby causing F.G. to undergo further harassment.[112]

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[113] Accordingly, "Title VI prohibits intentional discrimination based on race in any program that receives federal funding."[114] To

---

[109] *Morrow*, 719 F.3d at 177-78.
[110] Doc. 16 at 32-35.
[111] *Id.* at 32.
[112] *Id.* at 32-35.
[113] 42 U.S.C. § 2000d.
[114] *Bridges*, 644 F. App'x at 179.

state a claim of racial discrimination under Title VI, a plaintiffs must allege (1) "there is racial or national origin discrimination" and (2) "the entity engaging in discrimination is receiving federal financial assistance."[115]

As to the first element, when a claim is based upon the school's "failure to address a racially hostile environment," a plaintiff "may recover for alleged 'severe, pervasive, and objectively offensive' harassment if the school 'acts with deliberate indifference to known acts of harassment.'"[116] Moreover, "[t]he School District can only be held liable for a Title VI claim of racial discrimination when its response is 'clearly unreasonable in light of the known circumstances.'"[117] Stated differently, "a plaintiff must demonstrate 'severe *or* pervasive' harassment based on the student's race, and 'deliberate indifference to known acts of harassment.'"[118]

As this language makes clear, "Title VI 'prohibits only intentional discrimination'"[119] and, as such, school districts may only be held liable for instances of harassment "'of which they have actual knowledge.'"[120] "'Constructive knowledge is not sufficient.'"[121] To demonstrate knowledge, a plaintiffs must allege that the harassment was reported to an "appropriate person" who "is, at a minimum,

---

[115] *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 655 (E.D. Pa. 2020).

[116] *Bridges*, 644 F. App'x at 179 (quoting *Davis v. Monroe Cty. Bd. of Educ.,* 526 U.S. 629, 633 (1999)).

[117] *Id.* (quoting *Davis,* 526 U.S. at 648).

[118] *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (quoting *Castleberry v. STI Group*, 863 F.3d 259, 264 (3d Cir. 2017); *Davis,* 526 U.S. at 633).

[119] *Moore*, 471 F. Supp. 3d at 656 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)).

[120] *Id.* (quoting *Davis*, 526 U.S. at 650).

[121] *Id.* (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014)).

an official of the recipient entity with authority to take corrective action to end the discrimination."[122] Therefore, "a school district cannot be held liable for the acts of its teachers or staff through *respondeat superior* liability."[123] Even a single use of the "n-word" is sufficiently severe to satisfy the required level of harassment necessary to sustain a Title VI claim.[124]

With respect to the individual defendants, "[i]ndividual liability may not be asserted under Title VI."[125] Consequently, Plaintiffs' Title VI claims against the individual defendants will be dismissed with prejudice. As to the Title VI claim against JSASD, the allegations contained in the amended complaint are insufficient to state a claim for many of the same reasons outlined above as to Plaintiffs' other claims.

Again, it may only be inferred that three incidents of racial harassment were reported to an appropriate person at JSASD: the October 2021 incident where a student approached F.G. and used the "n-word"; the December 2021 incident where a student screamed the "n-word" at F.G.; and a March 2022 incident where a student threw a banana at an unidentified African American student and chanted the "n-

---

[122] *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). Although *Gebser* addressed a claim under Title IX rather than Title VI, "the scope of Title VI is defined in terms nearly identical to Title IX . . . [and] Courts have consistently applied the same legal analysis to construe Title VI and Title IX." *Smith v. Nat'l Collegiate Athletic Ass'n*, 266 F.3d 152, 157-58 (3d Cir. 2001) (internal citation omitted).

[123] *Moore*, 471 F. Supp. 3d at 656.

[124] *L. L.*, 710 F. App'x at 549 (citing *Castleberry*, 863 F.3d at 264).

[125] *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011).

word" toward that student.[126] While other incidents were alleged to have been reported,[127] there is either no allegation that those other incidents constitute racial harassment, or that reports were made to an "appropriate person" such that knowledge may be imputed to JSASD.

The three incidents detailed above are sufficiently severe to state a claim for relief under Title VI, as the incidents involve the use of the "n-word."[128] However, as to the two incidents that involved F.G., the amended complaint lacks any allegation regarding discipline that was (or was not) imposed. Absent averments regarding JSASD's response, it is not possible to conclude that JSASD acted with deliberate indifference to the harassment or that "its response is 'clearly unreasonable in light of the known circumstances.'"[129] And as to the December 2022 incident involving the throwing of a banana and use of the "n-word," the amended complaint makes clear that the some punishment was meted out for this incident, as the offending student was suspended.[130] It cannot be inferred from the amended complaint that such a punishment is clearly unreasonable, particularly since it is not even clear that F.G. witnessed this incident. Because the amended complaint fails to allege that JSASD acted with deliberate indifference, Plaintiffs' Title VI claim against JSASD will be dismissed.

---

[126] Doc. 10 ¶¶ 36-37, 42-46.
[127] *Id.* ¶¶ 31-35, 48-50.
[128] *L. L.*, 710 F. App'x at 549.
[129] *Id.* (quoting *Davis,* 526 U.S. at 648).
[130] Doc. 10 ¶ 46.

### D.    Leave to Amend

Having carefully considered the claims set forth in the amended complaint, Plaintiffs will be granted leave to file a second amended complaint. The Third Circuit has directed that, when a complaint is vulnerable to dismissal under Rule 12(b)(6), a court "must permit a curative amendment unless such an amendment would be inequitable or futile."[131] The Third Circuit has also stated that:

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.[132]

With respect to futility, the Third Circuit has sanctioned denial of leave to amend "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."[133] As detailed above, Plaintiffs may plausibly state a claim for relief as to all counts that will be dismissed, with the exception of those that they agree should be dismissed, and any Title VI claims against the individual defendants. The factual deficiencies in Plaintiffs' claims may be rectified by providing more concrete factual details regarding the responses to, and punishments imposed for, the alleged incidents, and to whom the various

---

[131]  *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).
[132]  *Id.*
[133]  *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

incidents were reported. Accordingly, the Court will grant leave for Plaintiffs to again amend their complaint.

## IV.    CONCLUSION

For the reasons stated herein, Defendants' motion to dismiss the amended complaint is granted, but with leave for Plaintiffs to again amend their complaint—with the exception of any claims asserted by Swisher and Gallman in their individual capacities, any claims asserted against the Jersey Shore Area School District Board of Directors, the Title VI claim as asserted against the individual defendants, and any request for punitive damages, which are dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge