# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| F.G., a Minor, by and through her Parents/Natural Guardians JENNA SWISHER AND REGINALD GALLMAN, | | No. 4:22-CV-01120 |
| | | (Chief Judge Brann) |
| Plaintiff, | | |
| v. | | |
| JERSEY SHORE AREA SCHOOL DISTRICT, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### OCTOBER 6, 2023

## I.    BACKGROUND

In June 2023, F.G. filed a three-count Second Amended Complaint through her parents Jenna Swisher and Reginald Gallman against Defendant, Jersey Shore Area School District ("JSASD"). Defendant subsequently filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim seeking to dismiss Counts I and II of the Second Amended Complaint. Pursuant to 42 U.S.C. § 1983, Count I alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, and Count II asserts a violation of the Due Process Clause of the Fourteenth Amendment. The motion is now ripe for disposition; for the reasons that follow, it is granted in part and denied in part.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[1] and *Ashcroft v. Iqbal*,[2] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[3] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[4]

### B.    Facts Alleged in the Second Amended Complaint

The facts alleged in the Second Amended Complaint, which this Court must accept as true for the purposes of this motion, are as follows. Over the course of her academic career at the JSASD, F.G. has been the victim of continuous racial

---

[1]    550 U.S. 544 (2007).
[2]    556 U.S. 662 (2009).
[3]    *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[4]    *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

harassment and bullying.[5] She is biracial, and there are only seven to eight black high school students in the District.[6]

### 1.    Discrimination Experienced by F.G.

F.G. first experienced racial discrimination in October 2018 as a middle school student when a fellow student asked her "when does your dad get out of jail?"[7] The student reasoned that "all black kids' dads are in jail."[8] This student then began to call her "Tanya" because it is "a black girl name."[9] Her parents spoke with middle school Principal Keith Veldhuis about this behavior, but the student was not disciplined.[10]

In February 2019, students sang "Baa Baa Black Sheep" at F.G., which she "believed to be discriminatory."[11] Her mother, Jenna Swisher, called Veldhuis that same day, but no students were disciplined.[12] Swisher also emailed Veldhuis and Assistant Middle School Principal Armbruster about this incident in March 2019 but received no response.[13] During this period, students also frequently whispered the "n-word" while standing behind her.[14]

---

[5]    Doc. 21 (Second Amended Compl.) ¶¶ 2, 8, 47, 97.
[6]    *Id.*
[7]    *Id.* ¶¶ 23-24.
[8]    *Id.* ¶ 25.
[9]    *Id.* ¶ 26.
[10]    *Id.* ¶¶ 27-28.
[11]    *Id.* ¶ 29.
[12]    *Id.* ¶ 30.
[13]    *Id.* ¶ 31.
[14]    *Id.* ¶ 33.

F.G.'s mother emailed then-Superintendent Wenrich about the October 2018, February 2019, and other, ongoing episodes of racial harassment.[15] Wenrich said that she would "discuss [the] lack of diversity celebrations at the next administrative team meeting."[16] Based on this response, F.G. avers that Wenrich failed to remedy the situation.[17]

On February 20, 2020, a video of JSASD high school students chanting the "n-word" was shown on the news.[18] In response to this video, on February 24, 2020, Swisher met with Assistant Superintendent Kenneth Dady. During this meeting, she raised the lack of "changes in [the] curriculum, programs, safety, or discipline for harassment or racial slurs."[19] The District ultimately took no actions to correct the "racially discriminatory behavior" seen in the video.[20] F.G. also observed "a student wearing a 'Trump 2020' mask" in August 2020, and when confronted with this issue, the Defendant similarly took no action.[21]

Later that academic year, a student swung a metal water bottle at F.G. and threatened to "drag" her.[22] This student faced no disciplinary action despite being

---

[15] *Id.* ¶ 34.
[16] *Id.* ¶ 36.
[17] *Id.* ¶ 37.
[18] *Id.* ¶ 40; Doc. 21, Ex. A (2020 News Clip). The same network had previously reported in 2010 that a black student received a picture of a lynching, and the JSASD's then-superintendent acknowledged that the district was "kind of naïve to dealing with diversity." Doc. 21, Ex. B (2010 News Clip).
[19] *Id.* ¶¶ 41-43.
[20] *Id.* ¶ 46.
[21] *Id.* ¶ 48.
[22] *Id.* ¶ 49.

reported.[23] At some point in 2021, a JSASD counselor admitted to Swisher that the District's staff needed to be taught how to handle discrimination.[24]

In the following school year, on October 29, 2021, two students "ran up to F.G. in the hallway and said: 'bro this school is filled up with a bunch of n***.'"[25] Principal Steven Keen met with F.G. and the school officer, Mr. Fera, about this incident. Keen and Fera asked her "how do you know [this discriminatory comment] was intentional?"[26] Fera later "discouraged" Swisher from filing a formal report and told her that he "didn't even have success" with the "n-word" chant video from 2020.[27] Nonetheless, F.G.'s mother filed "a JSASD Complaint of Harassment/Bullying Report Form" on October 31, 2021.[28] She "also emailed [Superintendent Brian] Ulmer about the incident, her concerns," and the formal complaint.[29] Ulmer indicated that he would speak with Dady, but Swisher never received any follow-up communication.[30]

On November 9, 2021, students pointed "infrared laser[s]" at F.G., and a student "jumped in between [her] and another African-American student" and yelled the "n-word" three times.[31] Following these events, Swisher filed another formal

---

23  *Id.* ¶ 50.
24  *Id.* ¶ 51.
25  *Id.* ¶ 52.
26  *Id.* ¶¶ 54-56.
27  *Id.* ¶ 57.
28  *Id.* ¶ 59.
29  *Id.* ¶ 62.
30  *Id.*
31  *Id.* ¶¶ 63-64.

complaint.[32] Also in November 2021, two students called "another black student a 'negro'" and asked if referring to Black Friday as "Negro Viernes" was offensive.[33]

On December 13, 2021, F.G.'s mother emailed Ulmer asking for an update on her formal complaints.[34] Ulmer spoke with F.G. in-person the next day.[35] Because other students saw her meeting with Ulmer, she was labeled a "snitch."[36]

The next alleged incident did not occur until March 14, 2022. Two students, B (last name unknown) and E (last name unknown), "threw a banana at an African-American student and yelled [the] 'n-word.'"[37] E "received one day of in-school lunch detention on March 15, 2022," but he still "sat in the lunchroom with all the [other] students" that day.[38] E also "threw things into F.G.'s hair and whispered" the "n-word" to her throughout class the following day.[39] Despite repeatedly harassing F.G. and other black students, E has only ever received one lunch detention.[40]

Due to this "ongoing racial discrimination, F.G. suffered a breakdown at home on March 17, 2022."[41] Her parents then met with Dady on March 22, 2022.[42] When asked about the previously filed complaints, Dady said they were still reviewing the

---

[32] *Id.* ¶ 65.
[33] *Id.* ¶ 67.
[34] *Id.* ¶ 66.
[35] *Id.* ¶ 69.
[36] *Id.* ¶ 70.
[37] *Id.* ¶ 74.
[38] *Id.* ¶¶ 74-76.
[39] *Id.* ¶ 78.
[40] *Id.* ¶ 79.
[41] *Id.* ¶ 80.
[42] *Id.* ¶ 84.

6

information.[43] Later that day, Swisher and Reginald Gallman also met with Keen and Assistant Principal Elizabeth Seagraves.[44] They "expressed fear for F.G.'s safety and [concern] that the district [was] not taking [their] concerns seriously."[45] No follow-up regarding the two prior complaints was provided at this meeting.[46]

On March 23, 2022, a student "directly involved" in the October 2021 episode called F.G. and her black friend "monkeys."[47] The following day, Swisher emailed Myers, a school guidance counselor, about this latest incident.[48] Myers did not respond and has not communicated with F.G.'s parents since.[49]

Most recently, E yelled "today is Tuesday 'n-word'" at F.G. and another student yelled "wait a minute I have to get this 'n-word' out of my way" on April 26, 2022.[50] Neither student faced disciplinary action for this behavior.[51]

F.G. faces racial discrimination to this day and "[n]o actions have been taken by [the District] to remedy" these issues.[52]

---

[43] *Id.* ¶ 85.
[44] *Id.* ¶ 86.
[45] *Id.*
[46] *Id.* ¶ 87.
[47] *Id.* ¶ 88.
[48] *Id.* ¶¶ 89-90.
[49] *Id.*
[50] *Id.* ¶¶ 91-92.
[51] *Id.* ¶ 93.
[52] *Id.* ¶¶ 94-95, 97.

### 2.     Relevant JSASD School Policies and Procedures

The JSASD has many policies and procedures concerning racial discrimination.[53] Examples include the need to maintain a discrimination-free learning environment; to establish "[r]easonably prompt timeframes" to resolve complaints; and to take "prompt, corrective action[s]."[54]

The Defendant has delegated to Superintendent Ulmer "the ultimate administrator decision-making authority" regarding these policies and procedures.[55] Assistant Superintendent Dady, Principal Keen, and Assistant Principal Seagraves have been given the authority to take corrective actions, subject to Ulmer's review.[56]

### C.     Analysis

Defendant argues that Count I (Equal Protection Claim) and Count II (Due Process Claim) of the Second Amended Complaint must be dismissed. The Court will address each claim in turn.

### 1.     Plaintiff's Equal Protection Claim

The District contends that Plaintiff's equal protection claim should be dismissed because she failed to identify any affirmative acts taken by the Defendant that establish a constitutional violation or a specific municipal custom.[57]

---

[53]   *Id.* ¶ 11.
[54]   *Id.* ¶ 13.
[55]   *Id.* ¶ 15.
[56]   *Id.* ¶¶ 16-18.
[57]   Doc. 25 (Motion to Dismiss Second Amended Compl.) ¶¶ 21-22.

In addressing 42 U.S.C. § 1983 suits against a municipal organization, the plaintiff "may allege that an unconstitutional municipal policy or custom led to his injuries or that his injuries were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."[58] Plaintiffs must also prove an underlying constitutional violation.[59]

Municipal policy is made "when a decisionmaker possess[ing] final authority" issues "a final proclamation, policy, or edict."[60] Custom, on the other hand, is an act "that has not been formally approved by an appropriate decisionmaker" but is "so widespread as to have the force of law."[61] In this arena, the Third Circuit requires plaintiffs to "identify a [specific] custom or policy."[62]

A plaintiff "must also allege that the policy or custom was the 'proximate cause' of his injuries" to survive a motion to dismiss.[63] This requires the plaintiff to demonstrate "an affirmative link" between the policy or custom and the alleged constitutional violation.[64] To do this, a plaintiff may show that a municipal organization "had knowledge of similar unlawful conduct in the past, failed to take

---

[58] *Rogers v. Pocono Mt. Sch. Dist.*, No. 3:21-CV-02072, 2023 U.S. Dist. LEXIS 116235, at *19 (M.D. Pa. July 6, 2023) (citing *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019)).

[59] *See e.g.*, *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 66 F. Supp. 3d 570, 585-88 (M.D. Pa. 2014).

[60] *Natale v. Camden Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Kneipp v. Tedder*, 95 F.3d 1199, 1212 (3d Cir. 1996)).

[61] *Id.* (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997)).

[62] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

[63] *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019).

[64] *Id.*

precautions against future violations, and that its failure, at least in part, led to [the constitutional] injury."[65]

If a plaintiff instead alleges a § 1983 failure-to-train claim, different pleading requirements apply. Rather than alleging an unconstitutional policy, the plaintiff must demonstrate that the organization's "failure to train its employees reflects a deliberate or conscious choice."[66] Deliberate indifference in this context is shown when: (1) municipal policymakers "know that employees will confront a particular situation;" (2) the situation "involves a difficult choice or a history of employees mishandling;" and (3) the "wrong choice by an employee will frequently cause [the] deprivation of constitutional rights."[67]

In the Second Amended Complaint, F.G. alleges an equal protection violation based on both a municipal policy or custom and a failure to train.

### a.   Equal Protection Clause Violation

Before turning to the § 1983 municipal liability analysis, Plaintiff's underlying constitutional violation must first be evaluated. Defendant cites several cases to suggest that a school's failure to address student-on-student bullying cannot

---

[65]   *Id.* (brackets, ellipsis, and internal quotation marks omitted).
[66]   *Id.* (internal quotation marks omitted).
[67]   *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 659 (E.D. Pa. 2020) (citing *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)).

lead to a constitutional violation.[68] These cases are inapposite because they concern

violations of the Due Process Clause, not the Equal Protection Clause.[69]

Plaintiff does not assert an equal protection violation claiming she was treated

differently than members of a similarly situated class.[70] Instead, she seeks to use the

deliberate indifference doctrine developed by the United States Court of Appeals for

the Second Circuit.[71] As this Court previously explained when addressing

Defendant's first motion to dismiss,[72] the Third Circuit has not yet considered

whether the Fourteenth Amendment's Equal Protection Clause "protects students

from a school's deliberate indifference to student-on-student harassment," but at

least two district courts in our Circuit have found the Second Circuit's reasoning in

*Gant* to be persuasive.[73] This doctrine has also been used by at least one district court

in the Second Circuit to evaluate how a school board of education responded to

---

[68]   Doc. 26 (Brief in Support of Motion to Dismiss Second Amended Compl.) at 10-11.

[69]   *See Byrne v. Springfield Sch. Dist.*, Civ. Act. No. 21-3199, 2021 WL 4847804 (E.D. Pa. Oct. 14, 2021) (concerning a substantive due process violation based on the state created danger exception); *G.S. v. Penn-Trafford Sch. Dist.*, 813 F. App'x 799, 803 (3d Cir. 2020) (concerning a due process liberty interest based on the state created danger exception); *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018) (concerning a bodily integrity interest under the Due Process Clause); and *Bridges*, 66 F. Supp. 3d at 585-88 (concerning a substantive due process violation based on a bodily integrity liberty interest).

[70]   *See e.g.*, *Nabozny v. Podlesny*, 92 F.3d 446, 454-58 (7th Cir. 1996).

[71]   Kindly note that the Second Circuit's deliberate indifference standard is distinct from the deliberate indifference standard used to evaluate a § 1983 municipal liability claim based on a failure-to-train. *See Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 140-41 (2d Cir. 1999).

[72]   *See* Doc. 19 (Memorandum Opinion) at 9.

[73]   *See Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, No. 19-CV-08450KSHCLW, 2020 WL 2847757, at *4 (D.N.J. June 1, 2010); *George v. Bd. of Educ. of the Twp. of Millburn*, 34 F. Supp. 3d 442, 460-61 (D.N.J. 2014).

student-on-student bullying.[74] Under the Pennsylvania School Code, boards of education govern public school districts.[75] Applying this standard to Plaintiff's equal protection claim against the JSASD is therefore consistent with the Second Circuit's development of the deliberate indifference doctrine, and this Court will likewise use the doctrine to evaluate F.G.'s equal protection claim.

To show deliberate indifference in this context, F.G. must demonstrate that: (1) she was "in fact harassed by other students" because of her race; (2) "that such race-based harassment was actually known" to the defendant; and (3) "that the defendant's response to such harassment was so clearly unreasonable in light of the known circumstances as to give rise to a reasonable inference that the defendant intended for the harassment to occur."[76] The first two prongs are easily established: F.G. has suffered from racial harassment for several years, and the JSASD superintendent had actual knowledge of this harassment.[77]

Finally, the Defendant's "response to such harassment" must be shown to be "clearly unreasonable."[78] Despite the severe harassment to which F.G. was

---

[74] *See Doe v. Torrington Bd. of Educ.*, 179 F. Supp. 3d 179, 193-95 (D. Conn. 2016). *See also DiStiso v. Cook*, 691 F.3d 226, 240 (2d Cir. 2012) ("Since *Gant*, it has been clearly established law in this circuit that claims of intentional race discrimination can be based on the 'deliberate indifference' of school boards, administrators, and teachers to invidious 'harassment, in the school environment, of a student by other children or parents'").

[75] *See* PENNSYLVANIA DEPARTMENT OF EDUCATION, SCHOOL BOARDS, DIRECTORS, AND TRUSTEES, https://www.education.pa.gov/Schools/Governance/Pages/default.aspx (last visited October 2, 2023).

[76] *DiStiso*, 691 F.3d at 241 (internal citations and quotation marks omitted).

[77] Doc. 21 (Second Amended Compl.) ¶¶ 23-27, 29-31, 34-36, 40-43, 52-62.

[78] *DiStiso*, 691 F.3d at 241.

subjected, no students faced any disciplinary consequences in the five incidents reported to the JSASD superintendent.[79] In fact, the only student to face any corrective action served a single lunchtime detention, although this incident was not known to Ulmer.[80] When this factual backdrop is construed in a light most favorable to the Plaintiff, she has established that the District's response to this ongoing harassment was "clearly unreasonable" and raises a "reasonable inference that [the District] intended for the harassment to occur."[81] Thus, Plaintiff has adequately pled an Equal Protection Clause violation.

### b.    Plaintiff's Municipal Policy or Custom § 1983 Claim

Plaintiff does not allege or identify a formal JSASD policy promoting racial harassment. Defendant can therefore only be held liable if it implemented a custom of inadequately addressing racial harassment.

To successfully allege that a custom exists, a plaintiff must show "that a [final] decision-maker is responsible [for the custom] through acquiescence."[82] Determining if an individual has final policymaking authority "is a question of state

---

[79]   Doc. 21 (Second Amended Compl.) ¶¶ 34-36, 40, 62, 66, 69, 100.
[80]   *Id.* ¶¶ 74-77.
[81]   *DiStiso*, 691 F.3d at 241.
[82]   *Kean v. Henry*, 523 F. App'x 879, 881 (3d Cir. 2013) (quoting *Chambers v. Sch. Dist. Of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009)).

law," and their authority must be "final and unreviewable" as to the "particular area of municipal business in question."[83]

At this stage of the proceeding, the allegations concerning Wenrich's, and then Ulmer's, delegated authority as superintendent are sufficient to conclude that they are final policymakers. The authority given to Dady, Keen, and Seagraves is subject to "review by the Superintendent."[84] This is fatal to any allegation that they have final policymaking authority; any reports of racial harassment made exclusively to Dady, Keen, and Seagraves must therefore be excluded from this analysis.[85] The incidents reported solely to Myers must also be excluded as guidance counselors are not § 1983 final policymakers.[86]

Therefore, only the allegations reported to Superintendent Ulmer and former Superintendent Wenrich are relevant to this analysis. Wenrich and Ulmer were alerted to five incidents of racial harassment over four years, including two formal complaints.[87] There is no "minimum number" of incidents required, but the Third Circuit has found five complaints against an officer in less than five years sufficient

---

[83]  *Moore*, 471 F. Supp. 3d at 659 (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986)); *Flood v. Sherk*, 400 F. Supp. 3d 295, 306 (W.D. Pa. 2019) (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006)).

[84]  Doc. 21 (Second Amended Compl.) ¶¶ 16-18.

[85]  *See Brennan v. Norton*, 350 F.3d 399, 427-28 (3d Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127-30 (1988)).

[86]  *See Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 n.1 (3d Cir. 2002) (citing *Pembaur*, 475 U.S. at 483).

[87]  The five incidents involve students asking F.G. if her father was in prison and calling her "Tanya"; singing "Baa, Baa Black Sheep" at her; chanting the "n-word" on video; using a slang version of the "n-word"; and pointing lasers and yelling the "n-word" at F.G. *See* Doc. 21 (Second Amended Compl.) ¶¶ 34-36, 40, 62, 66, 69, 100.

to establish a custom of tolerating excessive force.[88] In a more recent school case, a district court in our Circuit noted that "five instances of" disparate sexual misconduct "disciplinary decisions [over three years] would [have been sufficient], particularly at the motion to dismiss stage," to establish a custom.[89] These five unaddressed instances of racial discrimination are therefore sufficient to establish a custom of the JSASD inadequately responding to racial harassment at this stage of the proceeding.

F.G. must finally demonstrate an "affirmative link between" the custom and the constitutional violation she suffered.[90] Critically, there is no indication that the Defendant took any actions to prevent future occurrences of student-on-student racial harassment.[91] This failure directly led to the District's deliberate indifference to the ongoing harassment and the alleged constitutional violation.[92] Defendant's motion to dismiss the § 1983 Equal Protection Clause claim in Count I based on a municipal custom is consequently denied.

### c.    Section 1983 Failure to Train Claim

To successfully assert a failure to train claim, Plaintiff must show deliberate indifference on the part of the Defendant.[93] Here, it can be inferred that municipal

---

[88] *Flood*, 400 F. Supp. 3d at 312 (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 972-76 (3d Cir. 1996)).

[89] *Id.*

[90] *Est. of Roman*, 914 F.3d at 798.

[91] Doc. 21 (Second Amended Compl.) ¶¶ 94-100.

[92] *Cf. Flood*, 400 F. Supp. 3d at 311 ("The assertion that T.F.'s psychological and physical harms are being exacerbated by 'enduring the injustice' of knowing that his accusers have not been punished is too attenuated from any School District action to demonstrate proximate causation").

[93] *Moore*, 471 F. Supp. 3d at 659 (citing *Carter*, 181 F.3d at 357).

policymakers were aware that district employees would confront student-on-student racial harassment under the facts alleged.[94]

As previously explained by the Court, the choice facing school faculty when confronted with racial harassment is not difficult.[95] Instead, a history of the District mishandling instances of racial harassment and bullying must be shown. Seven incidents of racial harassment were reported to the Defendant over four years, but only one student received a lunch detention.[96] These factual allegations sufficiently support a history of employees mishandling racial harassment and bullying at this juncture. The lack of any response to the two formal complaints reinforces this conclusion.[97]

It must finally be determined whether the "wrong choice by" District employees "will frequently cause [the] deprivation of constitutional rights."[98] Plaintiff avers that the District failed to provide "additional training or retraining of students and staff;" to conduct "presentations and/or assemblies;" to disseminate "educational materials to the staff and/or student body;" and to provide "information, education or guidance to the public through Board meetings and announcements."[99] This lack of adequate training and the subsequent failure to properly respond to the

---

[94] *Id.*
[95] Doc. 19 (Memorandum Opinion) at 17.
[96] Doc. 21 (Second Amended Compl.) ¶¶ 27, 29-30, 48-50, 74-75, 91-93.
[97] *Id.* ¶ 100.
[98] *Moore*, 471 F. Supp. 3d at 659 (citing *Carter*, 181 F.3d at 357).
[99] Doc. 21 (Second Amended Compl.) ¶ 105.

racial harassment contributed directly to the constitutional violation at issue. By failing to correct this inaction, Defendant effectively "communicated a message of approval" to District personnel.[100] This rendered it likely that such constitutional violations would and will continue in the future.

### 2.   Section 1983 Due Process Claims

Turning now to Defendant's request to dismiss Count II, the Court will first evaluate the alleged procedural due process violation and then turn to the substantive due process claim.

### a.   Procedural Due Process Claim

To allege a procedural due process violation, plaintiffs must show that they were "deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property and that the available procedures did not provide due process of law."[101] The deprivation of the protected interest "must be attributable to the [School] District, not a private actor."[102]

F.G. contends that the District's "actions and failures and refusals to act [have] deprived [her] of access to educational opportunities or benefits."[103] Under Pennsylvania law, students have "a legitimate claim of entitlement to a public

---

[100] *Moore*, 471 F. Supp. 3d at 669.
[101] *Thompson v. State of Del. Dep't of Servs. For Child., Youth & Their Fams.*, 44 F. 4th 188, 194 (3d Cir. 2022) (internal quotation marks omitted).
[102] *Monn v. Gettysburg Area Sch. Dist.*, 553 F. App'x. 120, 123 (3d Cir. 2014) (citing *Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. City of Philadelphia*, 874 F.2d 156, 169 (3d Cir. 1989)).
[103] Doc. 21 (Second Amended Compl.) ¶ 110.

education."[104]  This is a protected individual interest under the Fourteenth Amendment.[105]

F.G. asserts that the JSASD failed to properly follow its procedures to address the ongoing racial harassment.[106]  Despite this allegation, "what process is 'due' is not" a statutory issue but instead "is a question of federal constitutional law."[107] In another student-on-student harassment case, a district court in the Third Circuit concluded that it would "make no sense" to give a student victim  "notice and [an] opportunity to be heard before" students bullied him "to the extent that his education was interfered with."[108] F.G. instead alleges that the District has "failed to investigate or discipline the offenders" and did not "follow [its own] established procedures."[109] However, the allegations demonstrate that F.G. and her parents repeatedly "complained [through various avenues] about [the] bullying, even if [the JSASD] did nothing" in response.[110] In short, the allegations establish that the JSASD provided, and F.G. availed herself of, procedures to address the ongoing harassment. "Thus, the facts of this case simply do not state a claim under the procedural due process clause."[111]

---

[104]  *Shuman ex rel. v. Penn Manor Sch. Dist.*, 422 F.3d 141, 149 (3d Cir. 2005).
[105]  *Id.*
[106]  Doc. 29 (Brief in Opposition to Motion to Dismiss Second Amended Compl.) at 19.
[107]  *Alderette v. Lawrence Cty. Career & Techniucal Ctr.*, No. 18-958, 2018 WL 6680576, at *18 (W.D. Pa. Dec. 19, 2018) (quoting *McDaniels v. Flick*, 59 F.3d 446, 458 (3d Cir. 1995)).
[108]  *Id.* at *13.
[109]  *Id*.
[110]  *Id.*
[111]  *Id.*

### b.    Substantive Due Process Claim

Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."[112] This typically prevents school districts from being held liable for student-on-student harassment; but there are two exceptions to this framework.[113] First, when a "special relationship" exists between the school and the individual student, a school may be required to prevent harm from private third parties.[114] Second, the "state created danger" exception applies if, and only if, the "state's own actions" create the danger that caused the plaintiff's injury.[115]

F.G. contends that a special relationship exists between herself and the JSASD solely because of Pennsylvania's compulsory school attendance laws.[116] The Third Circuit has repeatedly rejected this argument.[117] Therefore, F.G. has failed to plead a substantive due process clause violation through the special relationship exception.

F.G. is also unable to use the state created danger exception. This exception requires a plaintiff to demonstrate that:

---

[112] *Morrow v. Balaski*, 719 F.3d 160, 166 (3d Cir. 2013) (quoting *DeShaney v. Winnebago Cnty. Dep't. of Social. Servs.*, 489 U.S. 189, 197 (1989)).

[113] *Id.* at 166-67.

[114] *Id.*

[115] *Id.*

[116] Doc. 29 (Brief in Opposition to Motion to Dismiss Second Amended Compl.) at 20.

[117] *See e.g.*, *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 F. App'x. 172, 177 (3d Cir. 2016) (citing *Morrow*, 719 F.3d at 171).

(1) Harm ultimately caused by the state actor's conduct was foreseeable and fairly direct;

(2) A state actor acted with a degree of culpability that shocks the conscience;

(3) A relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions as opposed to a member of the public in general; and

(4) A state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.[118]

Even if F.G. could satisfy the first three prongs, she fails to identify any affirmative acts taken by the JSASD that have "created a danger" or "rendered [her] more vulnerable to danger."[119] There are numerous allegations that the district failed to adequately address the ongoing harassment.[120] Despite the assertion that Plaintiff "has identified affirmative acts, or the inference of affirmative acts, taken by Defendant," the Second Amended Complaint merely attempts to "redefine clearly passive inaction as affirmative acts."[121] It is rather telling that the bulk of the Due Process Clause allegations involve the District's failure or refusal to take certain actions.[122]

---

[118] *Moore*, 471 F. Supp. 3d at 659 (citing *Mann v. Palmerton Area Sch. Dist.*, 872 F.3d 165, 170-71 (3d Cir. 2017)).

[119] *Id.*

[120] Doc. 21 (Second Amended Compl.) ¶ 96.

[121] Doc. 29 (Brief in Opposition to Motion to Dismiss Second Amended Compl.) at 21; *Morrow*, 719 F.3d at 178.

[122] Doc. 21 (Second Amended Compl.) ¶ 105.

As has been found in similar cases in the Third Circuit, "inaction does not give rise to an affirmative act" for Due Process violations, and the Defendant's failure to adequately respond to the bullying cannot satisfy this fourth prong.[123] Therefore, Count II of the Second Amended Complaint is dismissed. Given that this is now F.G.'s second amended complaint, dismissal of this claim is with prejudice.

## III.    CONCLUSION

Defendant's motion to dismiss pursuant to Rule 12(b)(6) is granted in part and denied in part. Count II is dismissed with prejudice. The Defendant is directed to file an answer to Counts I and III.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[123]  *G.S.*, 813 F. App'x at 802.